**Joanne GLUS et al., Plaintiffs,**

v.

**The G. C. MURPHY COMPANY et al., Defendants.**

**Civ. A. No. 71-264.**

United States District Court, W. D. Pennsylvania.

July 29, 1971.

Rosenberg & Lubow, Pittsburgh, Pa., for plaintiffs.

Griggs, Moreland, Blair & Anderson, Pittsburgh, Pa., for G. C. Murphy.

Suto, Power, Balzarini & Walsh, Pittsburgh, Pa., for Unions.

## OPINION

GOURLEY, Senior District Judge:

In this civil rights class action in which sex discrimination in employment has been alleged, jurisdiction exists pursuant to 28 U.S.C.A. § 1343(4) and 42 U.S.C.A. § 2000e–5(f). Injunctive relief and damages therefor are being sought for the asserted discrimination. The immediate matter before the Court is a Motion to Dismiss. For present purposes, therefore, all facts well pleaded and set forth in the Complaint are accepted as true. Gardner v. Toilet Goods Assn., 387 U.S. 167, 87 S.Ct. 1526, 18 L. Ed.2d 704 (1966); Clark v. Uebersee Finanz-Korp., 332 U.S. 480, 68 S.Ct. 174,

92 L.Ed. 88 (1947); 2 A Moore's Federal Practice, § 12.08. Basically, the Complaint sets forth in two counts allegations of discrimination based on sex by the employer and by the former collective bargaining agents of plaintiffs.

The Court has held a full and complete hearing, reviewed the briefs and argument of counsel, and conducted its own independent research. It is the considered judgment of the Court, for the reasons stated herein, that the Motion to Dismiss must be denied in part and granted in part.

Because this Motion stands or falls on the basis of the facts alleged in the Complaint, it is essential that those facts are briefly stated here. Plaintiffs and the class they represent are female employees of defendant G. C. Murphy Company at its McKeesport, Pennsylvania, warehouse. The defendant Union and its International acted as the certified representative of these plaintiffs until February 1, 1971. The defendants entered various collective bargaining agreements which established seniority and compensation plans, one aspect of which was to limit promotions and pay because of sex. Separate wage rates were established for men and women performing the same duties. Separate seniority lists were established which adversely and discriminatorily affected the rights of plaintiffs in regard to hiring, layoffs, recall, and promotion. All of these acts have continued to the present time and have existed prior to July 1, 1964. Count one of the Complaint asserts that these acts constitute a violation of Title VII of the Civil Rights Act of 1964; count two of the Complaint asserts that these acts constitute a violation of the National Labor Relations Act and the Labor Management Relations Act of 1947 as amended, being a breach of the duty of fair representation.

All of the plaintiffs filed written charges under oath with the Equal Employment Opportunity Commission (EEOC). Thereafter the EEOC de-

ferred to the Pennsylvania Human Relations Commission, which waived jurisdiction back to the EEOC. On March 16, 1971, plaintiffs were notified by letter that defendants' voluntary compliance could not be obtained and that plaintiffs were entitled to file suit within thirty days of receipt of said letter. This instant suit was filed the next day, March 17, 1971. This Court takes the position that all the procedural requirements of Title VII have been complied with and that suit was timely filed, especially in view of the allegation that the unlawful employment practices complained of are continuing. It is clear that the restrictions on filing suit for discriminatory employment practices are to provide the EEOC an opportunity to conciliate the grievances and effect voluntary compliance with the Act. Antonopulos v. Aerojet-General Corp., 295 F. Supp. 1390 (E.D.Cal.1968). In determining whether a civil suit is timely, the applicable test is whether suit was brought within thirty days of receipt of the "suit letter." King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968). Moreover, the failure of the union to protect its members by attempting to delete allegedly discriminatory provisions was by its nature a continuing practice for detremining whether the action brought by the employees against the union was timely. Moreman v. Georgia Power Co., 310 F.Supp. 327 (N.D.Ga.1969). This Court has no doubt, therefore, that the instant suit was timely filed. Certainly a civil action is proper where the efforts of the EEOC in seeking voluntary compliance with the provisions of Title VII fail, because the primary role of the Commission is to seek the elimination of unlawful employment practices by informal means. Fekete v. U. S. Steel Corp., 424 F.2d 331 (3d Cir. 1970).

The holding in Fekete v. U. S. Steel Corp. makes clear that the intention of Congress was:

" * * * first, to outlaw employment practices which discriminate against any individual 'because of

such individual's race, color, religion, sex, or national origin'; second, to require that 'a person claiming to be aggrieved' must first resort to the Commission's processes; third, to insure that if the Commission finds reasonable cause, it will attempt to effect voluntary compliance by the employer; fourth, to provide that once the 'person claiming to be aggrieved' satisfies the statutory requirement of affording the Commission the opportunity to perform its statutory function, he has the right to a judicial determination whether he has been the victim of a violation."

■■ Essentially, then, the question presented by the Motion to Dismiss is whether the Complaint states a basis for relief under either Title VII of the Civil Rights Act of 1964 or the National Labor Relations Act of 1947 as amended and the Labor Management Relations Act. It is clear from the face of the Complaint that what is alleged is discrimination based on sex. It is equally clear that such discrimination, if proved, would constitute an unlawful employment practice under 42 U.S.C.A. § 2000e–2(a) and (c). Both employers and labor organizations may be proceeded against by a person claiming to be aggrieved. Hackett v. McGuire Brothers, Inc., 445 F.2d 442 (3d Cir. 1971). Moreover, the Complaint is not defective because it asserts violations of the Civil Rights Act and federal labor laws; it appears that an election of remedies is not a prerequisite to proceeding at this stage. See Evans v. Local Union 2127, International Brotherhood of Electrical Workers, AFL–CIO, 313 F.Supp. 1354 (N.D.Ga.1969) which holds that there is no need to exhaust grievance and arbitration procedures available under a collective bargaining agreement before bringing an action against a union and that the pre-emptive doctrine in favor of the National Labor Relations Board does not apply to oust federal courts of jurisdiction in suits involving an alleged breach of the duty of fair representation. Cf. Bremer v. St. Louis South-western R. Co., 310 F.Supp. 1333 (E.D. Mo., 1969) holding that there is no need to exhaust administrative remedies under the Railway Labor Act and contract remedies where there is an alleged discrimination based on sex. Perhaps the clearest expression on this point is made by the following statement:

"The national public policy reflected * * * in Title VII of the Civil Rights Act of 1964 * * * may not be frustrated by the development of overly technical judicial doctrines of standing or election of remedies. If the plaintiff is sufficiently aggrieved so that he claims enough injury in fact to present a genuine case or controversy in the Article III sense, then he should have standing to sue in his own right and as a class representative." Hackett v. McGuire Brothers et al., *supra.*

■ The preceding statement also makes it clear that under the circumstances presented by this Complaint, a class action is a proper vehicle for rectifying the alleged violations. Here, the requirements of Federal Rule of Civil Procedure 23(b) (2) are met because the class is alleged to be too numerous to be brought individually before the Court, because the plaintiffs will sufficiently represent and protect the interests of the class, and because there are common questions of law and fact applicable to all members of the class. See also Jenkins v. United Gas Corporation, 400 F.2d 28 (5th Cir. 1968).

■ Plaintiffs by stipulation have withdrawn their request for injunctive relief as against the defendant unions to enjoin future discriminatory activity. Indeed the need for injunctive relief against future union and employer activity is moot since defendant unions ceased being the certified representatives of plaintiffs on January 31, 1971. The purpose of a preliminary injunction is to preserve the status quo and thereby prevent irreparable harm until the respective rights of the parties can be ascertained by means of a trial on the

merits. Exhibitors Poster Exchange, Inc. v. National Screen Service Corporation, 441 F.2d 560 (5th Cir. 1971). See also Arco Fuel Oil Co. v. Atlantic Richfield Co., 427 F.2d 517 (2nd Cir. 1970). As a result of a new collective bargaining·agent now serving as the certified representative of plaintiffs and their bargaining unit, it is the considered judgment of this Court that maintenance of the status quo is impossible to achieve. But this does not mean that, if plaintiffs can prove what they allege, all equitable relief is barred as against the defendants. Part of the alleged wrongs here involve discriminatory seniority plans, established by collective bargaining agreements entered by defendants. This would not absolve defendants from culpability, because the rights guaranteed by Title VII are not rights which can be bargained away by the union, the employer, or both acting together. " * * * (I)f a discriminatory contract provision is acceded to the bargainee as well as the bargainor will be held liable." Robinson et al. v. Lorillard Corporation et al., 444 F.2d 791 (4th Cir. 1971). As noted in Robinson et al. v. Lorillard Corporation, *supra,* private employment discrimination suits are governed by 42 U.S.C.A. § 2000e–5(g) which provides for equitable relief upon a finding that a defendant has intentionally engaged in an unlawful employment practice. To intentionally engage in a discriminatory practice means that the defendants intended to do what they did, i. e. the practice was not accidental. Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969). The Act is clear that discrimination based on sex is such an unlawful employment practice. See 42 U.S.C.A. § 2000e–2. Even the existence of a business purpose does not automatically validate an unlawful employment practice. Griggs v. Duke Power, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). However, whether the facts in this case warrant a charge of discrimination should be determined not by a motion to dismiss but by a trial of all

the issues present. See Logan v. The General Fireproofing Company, (4th Cir. No. 15,272, filed July 23, 1971 but not yet officially reported).

Thus if plaintiff can establish their claims, and this Court is constrained to believe them for purposes of the Motion to Dismiss, they would be entitled to the equitable relief in the form of damages as prayed for against all defendants. Although the Act was designed to have prospective application, relief may be granted to remedy present and continuing effects of past discrimination. Robinson et al. v. Lorillard Corporation, *supra.* See also Jenkins v. United Gas Corp., *supra.*

Count two asserts the same basic facts as count one, but presents a question of a breach of the duty of fair representation. The Complaint asserts that the employer defendant knowingly participated in or acquiesced in the violation of the duty of fair representation. This is, however, a duty imposed on labor unions. The Supreme Court has held that:

"It is now well established that, as the exclusive bargaining representative of employees in (the bargaining unit), *the Union had a statutory duty* fairly to represent all of those employees, both in its collective bargaining * * * and in its enforcement of the resulting collective bargaining agreement. * * * Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). (Emphasis added.)

It seems crystal clear that the right of the plaintiffs to proceed based on a breach of a duty of fair representation is limited to an action against the Union defendants here. It is a novel legal thesis which would impose a duty of fair

representation on an employer; it is the union and not the employer who purports to speak for and represent the employee. Indeed it is because the union is the voice of the employee in all aspects of collective bargaining with the employer that a statutory duty to fairly represent all members of a bargaining unit is imposed on the union. Nowhere does the Complaint assert that the defendant Company breached its contracts entered between the Company and the Unions on behalf of the employees in the bargaining unit. In fact, it is the very enforcement of these contracts which forms the basis of both counts of the Complaint. Thus the situation presented by the instant suit differs from Vaca v. Sipes, *supra*, since there an employee discharged for poor health asserted as against the employer that his discharge was a breach of contract. This Court must also recognize that "(a) breach of statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, *supra*. Viewed in this context, the allegations of count two are sufficient to withstand defendant Unions' Motion to Dismiss but fail to state any basis for proceeding against defendant Company. Accordingly, the Motion to Dismiss as to defendant G. C. Murphy Company is granted with regard to count two of the Complaint and is denied as to the Union defendants.

The Court takes this opportunity to note the propriety of engaging the services of a Master to act as a fact finder with regard to examining the records of defendants to determine, for example, the amount of back pay due, if any, in the event that liability is found to exist. In the experience and judgment of this Court, it has been found to be both efficient and expeditious to employ for this purpose an attorney and/or accountant. And this practice has prevailed and been approved in this Circuit for approximately twenty years. Wilson v. Homestead Valve Manufacturing Company, 217 F.2d 792 (3d Cir. 1954).