Betty K. TRIVETT et al., Plaintiffs,

v.

TRI–STATE CONTAINER CORPORATION, Defendant.

Civ. A. No. 2649.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Nov. 7, 1973.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a class action for judicial enforcement of federally-protected civil rights of the plaintiffs and intervening plaintiffs under the Equal Employment Opportunities Act, Civil Rights Act of 1964, Title VII. 42 U.S.C. § 2000e et seq. This Court has jurisdiction, see memorandum opinion and order of May 18, 1971 herein. The Court received evidence on the issue, whether the plaintiffs are entitled to relief, on August 20–22, 1973. The matter has been under advisement since.

The defendant Tri-State Container Corporation (Tri-State) is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and each of the plaintiffs and intervening plaintiffs is an "employee" within the meaning of 42 U.S.C. § 2000e(f). Certain of the plaintiffs filed complaints on October 10, 1969 with the Equal Employment Opportunity Commission, charging Tri-State with continuing discriminatory employment practices against them and all other female employees in its plant in placement, pay, seniority, lay-off, recall, right to trial periods for jobs and other conditions of employment, because of their sex. Such Commission mailed to each such plaintiff on December 22, 1970 notice of their respective rights to sue. This action was instituted within 30 days thereafter. Each plaintiff and intervening plaintiff is a proper member of the class for whose benefit this action was brought. Miller v. International Paper Company, C.A. 5th (1969), 408 F.2d 283, 285 [1].

Tri-State is engaged in its plant in Elizabethton, Tennessee in the manufacture of corrugated paper boxes and other paper products. It meets a variable demand for many types of the products it manufactures which differ in size, shape, form, method of construction, ease of handling, etc. Some of its products and work require minimal physical exertion by its respective employees, while others require greater exertion.

The company hires employees in its plant in three general categories. There is a written job description for only one category, and before the onset of this lawsuit there was none. One group consists of skilled workmen who receive the highest compensation of any workers; another group consists of employees engaged in the comparatively lightest type of activity; and the third is comprised of workers who may do some of the lighter work and some of the heavier work. It is the latter two groups of employees with which the Court is primarily concerned herein.

By comparison, the lightest work in the plant is done by workers whom Tri-State has classified as class B folders. Those who do some of the lighter and some of the heavier work are classified as general floor helpers. the basic function of the class B folder is to fold and stitch smaller boxes and to fold larger boxes which are stitched by machines. The functions of the general floor helpers vary from folding boxes to heavier work including: the movement of floor skids; placing shafts in large rolls of paper; loading and unloading railroad boxcars; loading and taking products from presses; handling roll-stock; taking products from a large corrugating machine; handling in-plant trucks; operating a baler; operating a starch-mixer; stacking and bundling boxes (some of very large size); moving heavy loads; and taking products from large finishing machines, as well as providing relief or replacement for workers in the higher job classifications. Many of the functions in the plant are performed on a fairly regular basis by specific general floor helpers.

At the beginning of each workday's operations, Tri-State's supervisory employees determine for which jobs in the higher classifications temporary replacements are required and assign general floor helpers, who are qualified to operate the machine involved, to that task. The helper assigned receives the same pay as those in the higher classification for the time, after an established minimum, he performs his temporary assignment. The class B folders report initially to the company's A&P department.[1] As general floor helpers are assigned and reassigned temporarily in parts of the plant other than the A&P department, Tri-State's supervisors reassign from its A&P department sufficient class B folders to perform the tasks nor-

---

[1]. Tri-State began its operations in 1953. In 1955 it obtained orders to produce cardboard bread boxes for the A. & P. food chain and created a special department for that purpose, which is generally known in the plant as "A&P."

mally done by general floor helpers. This results in a situation where a class B folder and a general floor helper often are working simultaneously at the same task, doing identically or substantially the same job; however, such class B folder is paid for such service 15¢ an hour less than such general floor helper.

Historically, the corrugated box industry has been considered as being engaged in heavy work, and only men have, for the most part, been employed in it. The management of Tri-State was inspired to undertake to create tasks in its operations which women can perform in the industry and to compensate them more therefor than they could expect to receive in other jobs in the pertinent labor market. In furtherance of this objective, Tri-State employed women from the onset of its operations at Elizabethton.

■ Prior to March, 1972, Tri-State hired all its female employees as class B folders and all its male employees as general floor helpers.[2] Employees in each category were required to serve a probationary period; if such person hired proved to be able to do the work assigned satisfactorily, he or she was continued in employment. Throughout their employment, all class B folders were paid 15¢ an hour less than general floor helpers. Thus, on occasions when female class B folders were doing substantially the same work as male general floor helpers, and were receiving less compensation, Tri-State was engaged in an unlawful employment practice.

    *     *     *     *     *     *

* * * It shall be an unlawful employment practice for an employer

———

* * * to discriminate against any individual with respect to his compensation * * * because of such individual's * * * sex * * *.

42 U.S.C. § 2000e–2(a)(1).

Although stemming from a praiseworthy purpose, Tri-State's practice in this regard was "deliberate" as opposed to "accidental." See Sprogis v. United Air Lines, Inc., C.A. 8th (1971), 444 F. 2d 1194, 1201 [10], cert. denied (1971), 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543. There is no discernible reason why its class B folders, while doing substantially the same work as its general floor helpers, could not have been paid during such periods the same rate of compensation as was paid to general floor helpers. Payroll record-keeping might have been encountered had this been done, but there would have been no resultant forbidden discrimination because of the respective sexes of the two groups of workers. The plaintiffs are entitled to relief from this unlawful employment practice, including back pay for the respective periods of time during which they were doing substantially the same work as general floor helpers and receiving 15¢ an hour less pay.

■ The Equal Employment Opportunity Act, 42 U.S.C. § 2000e et seq., includes no time limitation for the award of back pay thereunder. Cf. Choate v. Caterpillar Tractor Company, C.A. 7th (1968), 402 F.2d 357, 361 [5]. Where there is no federal statute limiting a right of action created by a federal statute, the applicable state statute controls. Ellenburg v. Shepherd, D.C. Tenn. (1968), 304 F.Supp. 1059, 1061 [2], affirmed C.A. 6th (1968), 406 F.2d 1331, cert. denied (1969), 393 U.S. 1087, 89 S.Ct. 878, 21 L.Ed.2d 781. " * * * [C]ivil actions based upon the alleged violation of any federal * * * statute creating monetary liability for personal services rendered * * * or other recovery therefor; when no other time of limitation is fixed by the statute creating such liability, * * * shall be commenced within three (3) years from the accruing of the cause of action * * *." T.C.A. § 28–305; see Hire v. E. I. DuPont de Nemours & Company,

———

2. At the time of trial herein, Tri-State had initially employed three men as class B folders, but had employed no women as general floor helpers.

C.A. 6th (1963), 324 F.2d 546, 551–553[6], where this statute was applied to a claim, under the Universal Military Training Act, 50 U.S.C. Appendix § 459(d), for monetary liability for personal services rendered. The provisions of T.C.A. § 28–309, urged by the plaintiffs, are inapposite in this instance, because that statute excludes from its operation actions on contracts for which there is provision otherwise; here there is a provision otherwise. The Court concludes that the plaintiffs' claim for such back pay is limited to the period three years prior to the commencement of this action on January 22, 1971.

■■ During each of the calendar years 1968, 1969 and 1970, the demand of Tri-State for A&P boxes was reduced to the extent that layoffs of personnel were indicated. The plaintiffs claim that, during these layoffs, Tri-State was guilty of a further unlawful employment practice, in the form of discrimination against them with respect to their privileges of employment because of their sex. 42 U.S.C. § 2000e–2(a)(1). Employers which lay off female employees while retaining male employees with less seniority than the females commit unlawful employment practices if the discrimination against such females is on the basis of their sex. Robinson v. Lorillard Corporation, C.A. 4th (1971), 444 F.2d 791, cert. dismissed (1971), 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655; Danner v. Phillips Petroleum Co., C.A. 5th (1971), 447 F.2d 159, reh. denied (1971), 450 F.2d 881; Bowe v. Colgate-Palmolive Company, C.A. 7th (1969), 416 F.2d 711; Glus v. G. C. Murphy Company, D.C.Pa. (1971), 329 F.Supp. 563; Tippett v. Liggett & Myers Tobacco Company, D.C.N.C. (1970), 316 F. Supp. 292; Sciaraffa v. Oxford Paper Company, D.C.Me. (1970), 310 F.Supp. 891.

Tri-State has a plant-wide system of seniority. During these periods of layoff, class B folders, who were senior to some of the general floor helpers, were laid off while such general floor helpers continued to work. During such periods also, some new male workers were hired by Tri-State as general floor helpers. The work at the plant, except in the A&P department, remained constant during those layoff periods.

It appears to the Court that Tri-State had a valid judgmental decision to make concerning which employees should be laid-off during such slack periods. The lack of work occurred in the A&P department. General floor helpers could do whatever work of the class B folders as might be required, although management would be required to pay the general floor helpers 15¢ an hour more for services therein than would have been paid class B folders for the same work. On the other hand, class B folders were not qualified to do some of the heavier and higher classification work required of general floor helpers, if the latter were laid off. The Court finds, therefore, that the decision of Tri-State's management to lay off class B folders rather than general floor helpers with less seniority was for reasons other than the sex of the class B folders, and hence that there was no violation of the Civil Rights Act of 1964, Title VII, in the instances described. *Cf.* Ammons v. Zia Company, C.A. 10th (1971), 448 F. 2d 117, 120–121, where an employee was discharged because of a series of incidents not related to her sex without engaging in an unlawful employment practice, and Johnson v. Pittsburg-Des Moines Steel Co., D.C.Ala. (1970), 2 CCHEPD ¶ 10215, where an employee was terminated because she was considered not to possess the individual occupational capacities required by her job having nothing to do with her female sex, without the employer's engaging in an unlawful employment practice. The plaintiffs are entitled to no relief in connection with such employment practice which was based on factors other than their female sex.

■ The plaintiffs claim also Tri-State engaged in an unlawful employment practice, by discriminating against

them because of their female sex with respect to the conditions of their employment, 42 U.S.C. § 2000e–2(a)(1), having to do with "clock-out" time. They carried their burden of proving that female employees generally were required by Tri-State's supervisory personnel to remain at their respective posts of duty, while male employees in the plant generally were allowed to line up earlier at the time-clock and "clock-out" ahead of the female employees. This was an unlawful employment practice, cf. EEOC Decision no. 70–920 (1970), CCH Employment Practices Guide ¶ 6156, where an employer provided only men's bicycles for the use of employees in traveling from one building to another within the employment complex; the employer forbade its female employees from wearing slacks; and it had no restrictions upon the attire of its male employees. The plaintiffs are entitled to relief from this practice.

■ The plaintiffs claim further that Tri-State has engaged in an unlawful employment practice against them because of their female sex with respect to promotions and right to trial periods for jobs. 42 U.S.C. § 2000e–2(a)(1). They claim that they are prevented from acquiring skills for jobs in the higher classifications in the plant, by being denied equal opportunity with male employees to gain experience on devices therein for service on which higher pay is indicated and by the absence of a trial program.

As stated, supra, class B folders report initially each workday to the A&P department. General floor helpers and other workers in higher classifications report to their customary stations. When a worker in the higher classification is absent or requires relief, the general floor helper without a regular assignment and with the greatest seniority is assigned to that job as a temporary substitute. The regularly unassigned general floor helpers move up to other jobs temporarily on the basis of seniority, and class B folders are assigned temporarily to do general floor helper work.

All higher classification jobs are open in the event of a vacancy to bids from all junior classes upon the bases of seniority and ability. Thus, when there is a vacancy in a higher job classification, the general floor helper who has served as a relief or substitute operator is enabled to demonstrate greater ability in the position of higher classification because of the experience attained. To the extent that only females were employed as class B folders and only males were employed as general floor helpers, this system resulted in an unlawful employment practice and discrimination against female workers with respect to terms, conditions and privileges of employment, because of their sex. 42 U.S.C. § 2000e–2(a)(1). See Bowe v. Colgate-Palmolive Company, supra, 416 F.2d at 718 [3]. Six class B folders were promoted to jobs paying greater compensation than that of general floor helpers in the period 1969–1971, but Tri-State had no program of testing and training which enabled its class B folders to bid on an equitable basis against general floor helpers for jobs in the higher classifications when vacancies occurred. The plaintiffs are entitled to relief from this unlawful employment practice.

■ The plaintiffs, having been found hereinabove to have been victims of unlawful employment discrimination because of their female sex in the manners delineated, they are entitled also to an award of reasonable fees for the services performed for them herein by their respective counsel. 42 U.S.C. § 2000e–5(k); LeBlanc v. Southern Bell Telephone and Telegraph Co., D.C.La., 333 F.Supp. 602, 611–612 [12, 13], affirmed C.A. 5th (1972), 460 F.2d 1228.

Counsel for the parties will meet within one week herefrom and undertake to agree upon a proposed judgment for the relief of the plaintiffs on the basis of the findings and conclusions of the Court hereinabove, including a proper amount of fees for respective counsel for the plaintiffs, and a method of ascer-

taining back pay for them. If counsel are unable to agree upon a proper judgment, each will submit a proposed judgment.

All other matters hereby are reversed.