THE PEOPLE *ex rel.* Scott Bibb

*v.*

THE MAYOR AND COMMON COUNCIL OF ALTON.

*Opinion filed December 18, 1901.*

1. INSTRUCTIONS—*instruction should not leave jury to determine legal propositions.* It is reversible error for the court to give instructions which require the jury to find and determine legal propositions.

2. SAME—*when an instruction leaves jury to determine question of law.* An instruction is erroneous in leaving the jury to determine a question of law which authorizes them to find for the respondents in *mandamus* proceedings if they believe that children of lawful · school age were assigned to different schools by the proper authorities, "and that they had a legal right to make such assignment, without discrimination as to color."

3. SCHOOLS—*city has no right to establish separate schools for colored children.* A city has no right to establish separate schools for colored children and exclude such children from the schools established for white children, even though the schools established for colored children furnish educational facilities equal or superior to those of the schools established for white children.

4. SAME—*what amounts, in law, to discrimination on account of color.* Exclusion, without reason, of colored children from the schools to which their standing and residence would entitle them to admission if they were white children, amounts, in law, to discrimination against them on account of color.

RICKS, J., dissenting.

ORIGINAL petition for *mandamus;* issues tried in the Circuit Court of Madison county; the Hon. WILLIAM HARTZELL, Judge, presiding.

JOHN J. BRENHOLT, for relator.

L. D. YAGER, Corporation Counsel, E. B. GLASS, and BRADSHAW & HILSKOETTER, for respondents.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an original petition filed in this court by the People, upon the relation of Scott Bibb, for a writ of *mandamus* against the mayor and members of the common council (naming them) of the city of Alton, to compel them to admit the children of the relator, viz., Minnie Bibb and Ambrose Bibb, to the Washington or the most convenient public school of said city to which they have the right to be admitted, without discriminating against or excluding them, or either of them, therefrom on account of their color. The respondents filed an answer to said petition, to which answer the petitioner filed pleas, and issues of fact were made thereon as to whether said Minnie Bibb and Ambrose Bibb, or either of them, had been discriminated against and excluded, on account of their color, by the respondents, from the Washington school or the most convenient public school of said city to which they have the right to be admitted, which were certified by this court to the circuit court of Madison county for trial, and upon a trial in that court the jury found the issues for the respondents, and the verdict and proceedings of that court having been certified to this court, said verdict was set aside and the circuit court of Madison county was directed to submit said issues to another jury, (*People* v. *Mayor of Alton,* 179 Ill. 615,) and the issues having been by said court submitted to another jury, the proceedings in that court, including the verdict of the jury, have again been certified to this court.

The verdict was in favor of the respondents, and it is insisted by the relator the same should be set aside and said issues submitted to another jury for the following reasons:  First, the court misdirected the jury as to the law;  second, the first special finding submitted to the jury on behalf of the respondents is broader than the issues certified to said court for trial;  third, the verdict is contrary to the law and the evidence.

The court gave to the jury, on behalf of the respondents, the following instruction:

"The court instructs you, that if you believe, from the evidence in this case, the children of lawful school age in the city of Alton were assigned to different schools by the proper authorities, and that they had a legal right to make such assignment, without discrimination as to color, then your verdict should be for the defendants."

This instruction is erroneous in submitting to the jury a question of law, by permitting them to pass upon the powers of the city council with reference to the assignment of the school children to the different schools of said city, without the aid of the court.  We have repeatedly held it reversible error for the court to give instructions which require the jury to find and determine legal propositions.    *Mitchell* v. *Town of Fon du Lac*, 61 Ill. 174; *Byers* v. *Thompson*, 66 id. 421; *Henderson* v. *Henderson*, 88 id. 248; *Austine* v. *People*, 110 id. 248.

The court, upon behalf of the respondents, submitted to the jury the following interrogatory, which was answered by them in the affirmative:  "Do you believe that equal and reasonable educational facilities and privileges were furnished to the children of school age in the city of Alton on the first day of September, 1897, irrespective of color, and without discrimination?"  The issues of fact certified to the circuit court for trial were, whether said Minnie Bibb and Ambrose Bibb, or either of them, had been discriminated against and excluded, on account of their color, by the respondents, from the Washington

school or the most convenient public school of said city
to which they have the right to be admitted, and not
whether equal and reasonable educational facilities and
privileges were furnished to the children of school age
in the city of Alton, irrespective of color and without
discrimination. The complaint of the relator is that his
children have been excluded, on account of their color,
from the public school of said city located near his resi-
dence and been required to attend a school located a mile
and a half distant from his residence, established exclu-
sively for colored children. Such complaint is not met
by showing that the schools established for colored chil-
dren in said city equal or surpass in educational facilities
the schools established in said city for white children.
Under the law the common council of said city had no
right to establish different schools for the white children
and colored children of said city and to exclude the col-
ored children from the schools established for white chil-
dren, even though the schools established for colored
children furnished educational facilities equal or supe-
rior to those of the schools established for white children.
In *People* v. *Mayor of Alton, supra,* on page 632 it is said:
"It may be that the wisest of both races believe that the
best interests of each would be promoted by voluntary
separation in the public schools, and while such volun-
tary action, not in violation of law, could not be inter-
fered with by the courts, yet the law is too plain for
argument, and has been often decided, that no child oth-
erwise entitled to attend any public school in this State
can, on account of the color of such child, be excluded,
directly or indirectly, from such school by any school
officer or public authorities."

The special finding submitted to the jury is much
broader than the issue of fact submitted to the circuit
court for trial, and the same might well have tended
to mislead the jury by giving them to understand if the
Douglas and Lovejoy schools, which the evidence shows

to have been established exclusively for colored children, furnished educational facilities equal to those of the schools established exclusively for white children, that then the respondents might lawfully exclude the children of the relator from the Washington or other most convenient public school of the city to which they might otherwise rightfully be admitted, and require them to attend one of the schools established and maintained exclusively for colored children.

The verdict is contrary to the manifest weight of the evidence and is against the law, and should be set aside and the issues submitted to another jury. The children of the relator had formerly attended the Washington school, which was located near his residence, and which school, prior to September, 1897, had been maintained for the benefit of and attended by both white and colored children. During the summer of that year two new schools, known as the Douglas and Lovejoy schools, were established in said city by the respondents for the exclusive use of colored children, and at the commencement of the school year the children of the relator, and all other colored children, regardless of their places of residence in said city, were required to attend one of said schools. The children of the relator applied for admission to the Washington school, where they had formerly attended school and to which their standing entitled them to admission, and were forcibly excluded therefrom and directed to go to the Lovejoy school. No reason appears in this record for the exclusion of said children from the Washington school, or their assignment to the Lovejoy school, other than their color. Such exclusion, in law, amounted to discrimination against the children of relator on account of their color.

In *Chase* v. *Stephenson*, 71 Ill. 383, on page 385 it is said: "The free schools of the State are public institutions, and in their management and control the law contemplates that they should be so managed that all children

within the district, between the ages of six and twenty-one years, regardless of race or color, shall have equal and the same right to participate in the benefits to be derived therefrom. While the directors, very properly, have large and discretionary powers in regard to the management and control of schools, in order to increase their usefulness, they have no power to make class distinctions, neither can they discriminate between scholars on account of their color, race or social position."

In *People* v. *Board of Education,* 101 Ill. 308, on page 313 this court said: "Section 1 of article 8 of the constitution of 1870 declares: 'The General Assembly shall provide a thorough and efficient system of free schools, whereby *all* children of this State may receive a good common school education.' In pursuance of this provision of the constitution, which makes no distinction in regard to the race or color of the children of the State who are entitled to share in the benefits to be derived from our public schools, the legislature, in 1872, passed an act to establish and maintain a system of free schools. (Laws of 1870, p. 700.) Section 48 of the act provides that 'the directors of each district shall be a body politic and corporate, under a certain name. They shall establish and keep in operation, for at least five months in each year, and longer if practicable, a sufficient number of free schools for the proper accommodation of all children in the district, and shall secure to all such children the right and opportunity to an equal education in such free schools.' This section of the act was doubtless framed and adopted in view of the constitutional provision heretofore cited, and shows the clear intent of the legislature to make all children, regardless of race or color, between the ages of six and twenty-one years, beneficiaries, and entitled to the same rights and privileges in our free schools."

In *People* v. *Board of Education,* 127 Ill. 613, on page 624 it is said: "A careful reading of all the evidence before us forces the conviction that it was the purpose of re-

spondents to require the children of the relator, and all other colored children of the district, to attend what had been known as the colored school building, and to exclude all colored children of the district, below the high school grade, from the high school building. Especially are we convinced that these children were practically excluded from the said high school building by the principal because they were colored children, and that respondents, though informed of that fact, took no steps to have them admitted." And again, on page 623: "It is made unlawful to exclude a child from a public school on account of color, *either directly or indirectly.*"

The Supreme Court of Iowa, in *Clark* v. *Board of Directors*, 24 Iowa, 266, say (p. 277): "All the youths are equal before the law, and there is no discretion vested in the board of directors, or elsewhere, to interfere with or disturb that equality. The board of directors may exercise a uniform discretion, equally operative upon all, as to the residence, or qualifications, or freedom from contagious disease, or the like, of children, to entitle them to admission to each particular school; but the board can not, in their discretion, or otherwise, deny a youth admission to any particular school because of his or her nationality, religion, color, clothing or the like."

For the reasons suggested, the verdict of the jury certified to us is set aside and the circuit court of Madison county is directed to submit the issues to another jury, and to proceed in the case in accordance with the views we have expressed and as before directed.

*Verdict set aside and new trial ordered.*

Mr. JUSTICE RICKS, dissenting.