THE PEOPLE *ex rel.* Scott Bibb

*v.*

THE MAYOR AND COMMON COUNCIL OF ALTON.

*Opinion filed April 20, 1904.*

1. SCHOOLS—*what is not a defense to mandamus to enforce school rights of colored children.* If the facts proved in support of a petition for *mandamus* to compel a mayor and common council to admit colored children to the public schools show a clear discrimination against such children, it is no defense that respondents did not declare their unlawful intention or make a record of their illegal acts.

2. MANDAMUS—*when verdict of jury must be set aside.* A verdict in *mandamus* clearly contrary to the facts proven and absolutely without support in the evidence must be set aside in a court of review and a new trial awarded.

3. SAME—*correct practice where verdict in mandamus is contrary to the evidence.* In an original proceeding for *mandamus* in the Supreme Court, where the issues of fact are sent to a circuit court for trial, if the facts averred in the petition are clearly proved the relator should move the court to direct a verdict in his favor, otherwise the Supreme Court, if the verdict is contrary to the evidence, can only set the verdict aside and award a new trial.

ORIGINAL petition for *mandamus;* issues tried in the Circuit Court of Madison county; the Hon. CHARLES F. MOORE, Judge, presiding.

JOHN J. BRENHOLT, for relator.

E. B. GLASS, and L. D. YAGER, for respondents.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The relator, Scott Bibb, a colored citizen of the city of Alton, instituted this proceeding for a writ of *mandamus* requiring the respondents, the mayor and members of the common council of the city of Alton, to allow the children of the relator to be admitted to the Washington school, or the most convenient of the public schools of the city and school district of Alton to which they have the right of admission, without excluding either of them on account of their color or descent. The issues of fact in the case were certified to the circuit court of Madison county for trial, and a verdict in favor of respondents upon the first trial certified to this court was set aside on account of erroneous rulings of the circuit court in excluding competent and material evidence offered by the relator, and the circuit court was directed to submit the issues to another jury and to proceed in accordance with the views then expressed. (*People* v. *Mayor of Alton*, 179 Ill. 615.) The issues were again tried and a second verdict in favor of respondents was certified to this court and was set aside for error of the circuit court in giving an instruction and submitting a special finding. The circuit court was directed to again submit the issues to another jury and to proceed in accordance with the views expressed by this court. (*People* v. *Mayor of Alton*, 193 Ill. 309.) A full statement of the case and the facts will be found in the opinions heretofore filed. The issues have been tried again and a verdict in favor of the respondents has again been certified to this court.

The evidence upon the last trial was substantially the same as upon previous trials. It was proved by the relator, without dispute or contradiction, that his children had been attending the Washington school, and that when the school opened in September, 1897, they and all other colored children in the city of Alton were

excluded from that school and all other schools except the Douglas and Lovejoy schools; that policemen of the city of Alton, who were under the control and subject to the direction of the mayor and common council, were stationed at the doors of all the school houses except the Douglas and Lovejoy schools; that the police officers were in uniform, with their stars and armed with policemen's clubs, and acting in their capacity as policemen; that the white and colored children received cards assigning them to certain schools; that only colored children received cards directing them to the Douglas and Lovejoy schools and only white children received cards assigning them to the other schools; that the policemen stationed at the said schools forcibly excluded the colored children and prevented their entering such schools; that the children formed in line outside of the school buildings, and as they came to enter the school houses the policemen separated them, driving the colored children away and telling them to go to the schools they were assigned to, pushing them out of the line or off from the steps and allowing the white children to go in; that this was continued for two or three weeks, and that the relator's children were assigned to the Lovejoy school, more than a mile farther from his residence than the Washington school, which they had attended. There was no attempt whatever to disprove such facts, but there was evidence in behalf of the relator of statements of teachers and officials of the city showing their intention to exclude colored children from schools attended by white children, which was contradicted. There was evidence for the relator that teachers said they were ordered not to allow colored children to attend their schools and were not allowed to teach colored children; that policemen said that they were told by their superiors not to allow children to go in without a permit; that the mayor had told them to do as they did, and also evidence that the mayor said he would make the niggers

go to the schools built for them if it took the whole po-
lice force. Those persons, with one accord, denied that
they ever made any of the remarks attributed to them
showing their intention, and a witness for the defend-
ants, who had been city treasurer, post-master and al-
derman, and was a member of the city council when the
ordinance abolishing the school districts and putting
them all into one district was passed, testified that at
the time said ordinance was passed "there was nothing
said about a conspiracy by the mayor or council in chang-
ing the ordinance to exclude the colored children of Al-
ton." The respondents confined themselves to evidence
that they had not declared their intention to violate the
statute of the State or made a record of their illegal
acts in disregard of the law, and such evidence had no
tendency to prove that the intention clearly manifested
by their acts did not exist. Whether the denials were
true, or were due to failing memory, or to some other
cause or motive, the fact, if it is a fact, that the inten-
tion was not declared does not in any manner affect
the rights of the parties. The acts proved manifested
the intention of the parties and afford a sure and relia-
ble guide as to its character, regardless of the question
whether they said they were going to violate the law
or not. It would be incredible that the police would do
what they did without the direction of their superiors to
whom they were amenable, or that their acts, continued
for the length of time they were, could have been with-
out the direction and approval of the respondents, or
that there could have been any other object than the ex-
clusion of the colored children from the public schools,
with the exception of the Douglas and Lovejoy schools.
Counsel for respondents can scarcely be serious in in-
sisting that there is no evidence of any plan to discrimi-
nate, or of any discrimination, against any colored child.
They cannot suppose that the court would be so simple
and credulous as to adopt such a view. Evidence of the

character contained in this record would be accepted by any impartial juror as conclusive evidence of an intention even in the gravest and most serious offense involving life or liberty, and the verdict can only be accounted for as a product of passion or prejudice. It is contrary to all the facts proved and absolutely without support in the evidence. In such case, where the verdict clearly appears to be unsupported by the evidence, it is the duty of the court to set it aside and to award a new trial. *People* v. *Town of Waynesville*, 88 Ill. 469.

It is urged by respondents that relator's children are now nearly grown, and that they have been out of school so long that the writ will do them no good, and it should be denied for that reason. We do not regard the fact that there has been a denial of their legal rights for such a length of time as a sufficient ground for refusing to enforce the law.

Counsel for the relator urges that a peremptory writ of *mandamus* should be awarded on the ground that the evidence in the record shows the relator to be entitled to it. It is true that the averments of the petition were clearly proved, that there was no evidence tending to prove the contrary, and that the verdict was against the evidence. In that condition of the evidence the relator might have moved the circuit court to direct a verdict in his favor, which, doubtless, the court would have done. The issues were sent to the circuit court for trial, in conformity with the practice governing the trial of issues of fact in actions at law before a jury, and such a direction would have been in accordance with such practice. In the present condition of the record the verdict must be set aside and a new trial granted.

The verdict certified to this court is set aside and the circuit court is directed to submit the issues to another jury, and to proceed in accordance with the views expressed in this opinion and the previous opinions filed in this case.      *Verdict set aside and new trial ordered.*