**LUETTA SAMUEL, et al., Plaintiffs**

**v.**

**VIRGIN ISLANDS TELEPHONE CORPORATION, Defendant**

Civil No. 75-6

District Court of the Virgin Islands

Div. of St. Croix

July 8, 1975

ROSSKOPF & DEMA, ESQS. (JOHN K. DEMA, of counsel), Christiansted, St. Croix, V.I., *for plaintiff*

BORNN, McLAUGHLIN & FINUCAN, ESQS. (EDITH L. BORNN, of counsel), St. Thomas, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM

Before this Court for consideration is a motion by defendant to dismiss plaintiffs' amended complaint.[1] The amended complaint requests declaratory and injunctive relief and damages based on 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, Chapters 1 and 5 of Title 10 of the Virgin Islands Code, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

Plaintiffs have alleged that defendant Virgin Islands Telephone Corporation (hereafter, Vitelco) maintains "practices, policies, customs and usages which discriminate against plaintiffs and members of their class because of their race, color and sex with respect to hiring, terms and conditions of employment, job classification, pay, promotions and training." Jurisdiction is based on 42 U.S.C. § 2000e et seq., 28 U.S.C. § 1343(4), of the Revised Organic Act of 1954, 4 V.I.C. § 32(a), and 10 V.I.C. §§ 3 and 7.

The named plaintiffs, all of whom are black, assert their representation of a class "of black persons and persons of Spanish origin and female employees who are employed or might be employed or who have recently been employed by the Virgin Islands Telephone Company at all of its plants, offices and facilities in the Territory of the United States Virgin Islands" and allege: 1) that defendant has established a pattern or practice of sex discrimination with regard to hiring, job classification, salaries, promotion, training programs and facilities in violation of 10 V.I.C. § 64(1)(a) and 10 V.I.C. § 54(2)(a), (b) and (c); 2) that defendant has established a pattern or practice of discrimination against black and Spanish-surnamed employees with regard to job classification, pay, promotions, notification of job vacancies, personnel tests, enforcement of rules

---

[1] The issues presented in defendant's motion to dismiss the original complaint were rendered moot by the filing of the amended complaint.

66

and regulations and training and other discriminatory practices, in violation of 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 1981, 10 V.I.C. § 3(a) and (b) and 10 V.I.C. § 64(1)(a).

In its motion to dismiss, defendant makes two basic arguments: that plaintiffs may not "bring an action in District Court alleging discrimination on the basis of sex under Chapters 1 and 5 of Title 10 of the Virgin Islands Code," and that they may not bring an action "alleging discrimination on the basis of Spanish origin" under 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 1981, 10 V.I.C. § 3(a) and (b) and 10 V.I.C. § 64(1)(a).

Under section "IV." of its memorandum in support of the motion, defendant particularizes the above contentions as follows: First, it states that plaintiffs may not maintain their claim of national origin discrimination under 42 U.S.C. § 2000e et seq., demonstrating that the initial complaint filed with the Virgin Islands Department of Labor and the Equal Employment Opportunity Commission alleged discrimination based only on race (black), that the scope of the EEOC's investigation was directed and limited to an examination of race-based discrimination against blacks, and that the Determination of Discrimination issued by the EEOC found race-based discriminatory acts against blacks only. Therefore, on the strength of Sanchez v. Standard Brands, Inc., 2 EPD ¶01,252, 431 F.2d 455 (5th Cir. 1970), EEOC v. Raymond Metal Products Co., 385 F.Supp. 907 (D. Md. 1974), and EEOC v. New York Times Broadcasting Service, Inc., 6 EPD ¶5747, 364 F.Supp. 651 (W.D. Tenn. 1973), defendant alleges that the scope of any judicial determination is limited to allegations of race-based discrimination.

Second, defendant asserts that plaintiffs may not maintain an action under § 1981. This argument is based on the proposition that since all of the named plaintiffs are black,

and since none are Spanish-surnamed, they may not represent those plaintiffs whose claims are based on national origin discrimination. Defendant cites Wells v. Ramsay, Scarlett and Co., Inc., 9 EPD § 9869 (5th Cir. 1975) in this connection.

Third, defendant argues that plaintiffs have no standing under 10 V.I.C. § 3(a) and (b) or § 64(1)(a). Defendant utilizes the same reasoning here as in the preceding paragraph, viz., that only plaintiffs of Hispanic origin would have standing to sue under the Virgin Islands statute for alleged discrimination based on national origin.

Additionally, defendant suggests at this point that plaintiffs' suit under 10 V.I.C. § 3(a), (b) and (c) and § 64(1)(a) may not be considered by this Court because the plaintiffs have failed to exhaust their administrative remedies as provided in 24 V.I.C. § 451–58. Specifically, plaintiffs have not received any final order from the Virgin Islands Department of Labor on a verified complaint filed with that agency on May 30, 1973. Defendant urges that receipt of such an order is a prerequisite to filing suit in this Court.

Along these same lines, defendant argues that "there has been no determination by the Commissioner of Public Safety that, in fact, a violation of Chapter 1 of Title 10 on the basis of national origin has occurred."

Finally, defendant claims that plaintiffs may not bring an action in district court alleging sex discrimination in violation of 10 V.I.C. § 64(1)(a) and (2)(a), (b) and (c). Three reasons are advanced: 1) these statutory provisions are inapplicable because they did not become effective until more than one year after plaintiffs filed their complaint with the Virgin Islands Department of Labor and the EEOC; 2) Chapter 5 of Title 10 vested the right to sue under its provisions in the Virgin Islands Civil Rights

Commission only, and since the Commission has never been appointed by the Governor of the Virgin Islands, plaintiffs' "only recourse would be to file a petition for mandamus, demanding that the Governor establish the Commission. . ."; 3) Chapter 5 of Title 10 gave exclusive original jurisdiction to review sex discrimination claims to the Municipal Court of the Virgin Islands, and thus, even if private individuals were allowed to sue on their own behalf, they could not choose the district court as their original forum.

Having now reviewed, in turn, each of defendant's arguments in support of its motion to dismiss the amended complaint, I conclude that the motion must be denied. My reasons are set forth below.

First, whether or not the initial complaint filed by plaintiffs with the EEOC and the Department of Labor, and the "amended-perfected" complaint filed with the EEOC only alleged acts of discrimination against blacks on the basis of race and color, and whether or not the investigation and determination of the EEOC only concerned acts of discrimination against blacks by Vitelco, makes no difference at this stage of the proceedings:[2] plaintiffs' amended complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, has eliminated the jurisdictional problems which would inevitably have arisen for them had they attempted to allege discrimination based on national origin or sex under 42 U.S.C. § 2000e, since no complaint on these grounds was first filed with the EEOC. By their amended complaint, plaintiffs have limited the discriminatory acts complained of under Title VII to those based on race and color, and now, having

_____
[2] Parenthetically, there is evidence that the complaints and the EEOC determination did not only concern discrimination against blacks, but concerned, as well, discrimination against Spanish-surnamed persons on the basis of race.

followed the proper procedures set forth in Title VII, those members of the class alleging discrimination in training, promotions, wages and the like on the basis of race and color are properly before this Court.

■ Discrimination on the basis of national origin is presently complained of under 42 U.S.C. § 1981 and Chapters 1 and 5 of Title 10 of the Virgin Islands Code. The definitive case in the Third Circuit dealing with actions brought under § 1981 is Young v. International Telephone Co., 438 F.2d 757 (3rd Cir. 1971). It held, inter alia, that § 1981 is applicable to private discrimination, id. at 760, accord, Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied, International Harvester Co. v. Waters, 400 U.S. 911 (1970); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), that § 1981 applies to the employment situation, id., and that "nothing in Title VII of the Civil Rights Act of 1964 imposes any jurisdictional barrier to suit brought under § 1981 charging discrimination in private employment." Id. at 763. For the plaintiffs in this case, the significance of Young is that exhaustion of administrative procedures involving the EEOC is not required before a suit alleging national origin discrimination under § 1981 can be brought in district court. Therefore, plaintiffs' allegations of national origin discrimination based on § 1981 can be heard by this Court at the present time.

Defendant's second contention, concerning the standing of the named plaintiffs to represent the Hispanic members of the class charging national origin discrimination under § 1981 has, of course, been brought in the context of a Rule 12(b)(6) motion to dismiss for lack of subject matter jurisdiction. I am obliged at this point, therefore, to decide whether, as a matter of law, the named plaintiffs, who are

blacks,[3] may represent the Spanish-surnamed members of the proposed class.

Defendant asserts that this Court should look to Wells v. Ramsay, Scarlett and Company, Inc., supra, for guidance on this issue. I do not find that case to be apposite. There, the Fifth Circuit found no nexus between a black longshoreman who had been discharged as a foreman of a stevedoring company and the class of black longshoremen he sought to represent. However, the facts revealed that the plaintiff was neither a member of the longshoreman's union nor, by his own testimony, even physically able to perform the duties of a longshoreman. On these grounds the circuit held that the plaintiff could not assert the claims of the class.

In my opinion, what is important in determining whether certain plaintiffs are representative of a class is not, for example, whether they are of a particular national origin or a particular color, but whether, as Rule 23(a) (3) states, "the claims . . . of the representative parties are typical of the claims . . . of the class . . . ." The essence of the amended complaint is that Vitelco has been discriminating in the same general way against its minority employees as a *group* because of their minority status vis-a-vis promotion, training, wages and the like. Plaintiffs have alleged, in other words, that the discriminatory practices complained of affect the class as a whole rather than any particular segment of minority employees in a unique manner. Therefore, the claims of the named black plaintiffs are, at least, facially, typical of the claims of the Spanish-surnamed members of the class of minority employees of Vitelco.

This being the case, as a legal matter, I believe the named black plaintiffs may represent the members of the proposed class of Hispanic-origin persons suing under § 1981.

---

[3] See defendant's exhibit "a".

Precedent for this conclusion appears in at least two cases, Sabala v. Western Gillette, Inc., 362 F.Supp. 1142 (S.D. Tex. 1973) and Godbolt v. Hughes Tool Co., 63 F.R.D. 370 (S.D. Tex. 1972).

In Sabala, plaintiffs, who were Mexican-Americans, alleged racial discrimination under 42 U.S.C. § 2000e et seq. and § 1981 by defendant against both Mexican-Americans and blacks employed by defendant. The Court there held that plaintiff Sabala could "adequately represent the class of both Mexican Americans and Blacks . . . ." Id. at 1147. While the Court did not make explicit its reasoning, the only conclusion that may be reached is that the Court believed the claims of the Mexican-Americans to be typical of the claims of the entire class, including the black plaintiffs.

In Godbolt, plaintiffs initiated a Title VII class action alleging various forms of employment discrimination "against Negro persons because of race, or color . . . ." Id. at 371–72. The original class was "defined as composed of Negro persons who are, or might be, employed by defendant Hughes Tool Company . . . ." Id. at 372.

Following the filing of the complaint, the Court was apparently notified of a "potential Mexican-American intervenor." Id. at 374. Prior to any formal intervention by this party, the Court, citing Harvey v. International Harvester, 56 F.R.D. 47 (N.D. Cal. 1972) (where class status was provisionally given to a class of Negroes, Spanish-surnamed individuals, Orientals and American Indians), redefined the class under Rule 23(d) to "include . . . past, present, or future employees of defendant . . . who have been, continue to be, or might be adversely affected by reason of race, color or *national origin* . . . ." Id. (Emphasis added.)

Because Godbolt was brought under Title VII, it must be presumed that the EEOC had previously made an investi-

gation concerning discrimination against blacks based on race and color, and that plaintiffs were in the district court either because they had been issued a Right to Sue Letter or because the EEOC failed to accomplish a conciliation. It must also be presumed that when the Court issued its order designating the class, none of the named plaintiffs were Mexican-Americans. The effect of the order was thus to allow the named black plaintiffs to represent anyone in the class discriminated against on the basis of "national origin"—despite the fact that, as defendant would argue, the blacks were not and could not be Mexican-Americans, and despite the fact that the scope of the EEOC investigation must have been limited to an examination of claims based only on race and color (black). In so enlarging the class, the Court reasoned that:

[d]espite the designation of alleged discrimination against Spanish-surnamed persons as being based on "national origin," as a practical matter, discrimination against "national origin" minorities differs little, if at all, from discrimination against "racial" minorities.

Id.

On the basis of these two cases, therefore, I see no reason why, as a matter of law, the named black employees of Vitelco should not be able to represent the Spanish-surnamed employees under § 1981. Whether they have chosen to label the discrimination against them as based on "race" or "national origin" should not be determinative.

My conclusion that the named black plaintiffs have standing under § 1981 for purposes of avoiding a motion to dismiss under Rule 12(b)(1) should not be construed as a determination of the class. Presumably, an order under Rule 23(b)(1) permitting this suit to proceed as a class action vel non. will await the first round of discovery, if not a hearing, so that the Court will have enough facts at its disposal to make a proper decision on

73

the matter. If, at that time, proof should indicate that the alleged discrimination against one minority differed substantially from that against another, the class designation may be appropriately modified.

The preceding discussion bears on defendant's third contention, that plaintiffs have no standing to represent the Spanish-surnamed members of the class under 10 V.I.C. § 3(a) and (b) and § 64(1)(a). In fact, even if the rule had been established in federal courts that black plaintiffs could not represent Spanish-surnamed plaintiffs, this Court would not be bound to follow that rule as to suits brought under Title 10 of the Virgin Islands Code. Nor would it be inclined to follow such a rule, particularly in light of the strong statement of policy contained in § 61 of Title 10 against all forms of discrimination, the broad reading which I believe must be given to the entirety of Chapter 5 of Title 10, as well as my determination that, for the purpose of deciding the Rule 12(b)(1) motion as to the federal claim, the complaint sufficiently alleges discrimination adversely affecting, in a similar fashion, all of the proposed members of the class. I therefore find that plaintiffs have standing under 10 V.I.C. § 3(a) and (b) and § 64(1)(a).

The contention that plaintiffs may not seek the help of this Court until the Department of Labor has acted on their complaint, as provided in 24 V.I.C. § 453 et seq. can be summarily disposed of. The mechanism which Chapter 17 of Title 24 establishes is somewhat akin to that established by 42 U.S.C. § 2000e et seq. Under § 453, an aggrieved person "may file a verified complaint" with the Department of Labor alleging an unlawful employment practice. The department is then to make an investigation and attempt to eliminate the practice. If the department does not succeed in eliminating the practice, it is to serve an accusation on the alleged violator, who must then

answer the charges at a hearing. After such hearing, if the department finds that the alleged violator has engaged in any unlawful employment practice, it is to state its findings of fact and issue an order to cease and desist any such practice to the violator. Further, the department is empowered to take affirmative action to effectuate the purposes of the statute. Any person aggrieved by a final order of the department may obtain review in district court.

Section 452 of Title 24 speaks in terms of a "prompt" investigation by the Department of Labor and an "immediate endeavor" to eliminate any unlawful discrimination revealed by the investigation. Sections 453–55 do not make mention of time constraints upon the Department.

Generally, speaking, where a statute imposes no time limit on a governmental agency to perform a duty, a "reasonable time" will be imposed by a court. Here, in light of the language of § 452 and the nature of the activity Chapter 17 of Title 24 seeks to prevent, it would not be improper to expect the Department of Labor to act in a prompt fashion.

█ As of the date of this memorandum, the Department of Labor has neither made an investigation, held a hearing, nor issued any findings or orders of its own, despite the fact that plaintiffs' complaint was filed with that agency more than two years ago. Clearly, the Department of Labor has not acted within a "reasonable time," let alone "promptly." Therefore, since plaintiffs' attempts to exhaust the administrative remedies provided to them under Title 24 have proven futile, I see no reason to require them to continue to wait for a response from, or to refile with, the Department of Labor. Accord, U.S. ex rel. Marrero v. Warden, Lewisburg Pen., 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 414 U.S. 996 (1974).

As for defendant's argument that the Commissioner of Public Safety has not made a determination that a violation of Chapter 1 of Title 10 has occurred, as I read Chapter 1 (which has been repealed by Chapter 5 of Title 10), § 6 gave the Commissioner of Public Safety authority only over the "club facilities" discussed in § 4. The Commissioner's authority was not directed to employment discrimination. Therefore, § 6 of Title 10 is not relevant to this litigation.

■ Defendant's final contention, that plaintiffs' allegations of sex discrimination under 10 V.I.C. § 64(1)(a) and (2)(a), (b) and (c) are not maintainable, while somewhat complicated, may be dealt with easily. The first argument, that Chapter 5 of Title 10 was not in effect until after the filing of plaintiffs' complaint, must fall in light of plaintiffs' allegation that the discriminatory acts complained of, and concomitantly the violations of the statute, are "continuing." See generally Fekete v. U.S. Steel Corp., 353 F.Supp. 1177 (W.D. Pa. 1973); Hecht v. Cooperative for Am. Relief Everywhere, Inc., 351 F.Supp. 305 (S.D. N.Y. 1972); Glus v. G. C. Murphy Co., 329 F.Supp. 563 (W.D. Pa. 1971).

■ The second argument, that the enforcement of Chapter 5 of Title 10 had been delegated exclusively to the Virgin Islands Civil Rights Commission, thus pre-empting private actions, cannot fare better. Defendant admits that the Civil Rights Commission was never appointed in due course by the Governor of the Virgin Islands, as contemplated by 10 V.I.C. § 62(b). Nonetheless defendant views plaintiffs as without a remedy to vindicate the rights clearly enumerated for them in Chapter 5, other than to file a petition in this Court for a mandatory order compelling the Governor to appoint the Commission. For this Court to favor such a position would be to contravene the clear intention of the Virgin Islands Legislature

76

that the Territory has the responsibility to act to assure that every individual within this Territory is afforded an equal opportunity to enjoy a full and productive life and that failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the Territory and its inhabitants . . . .

10 V.I.C. § 61. It would also be a denial of the majority rule that "a person aggrieved by the violation of a civil rights statute is entitled to pursue a remedy which will effectively reimburse him for or relieve him from violation of the statute, notwithstanding the statute did not give him such right or remedy." Pompey v. General Motors Corporation, 385 Mich. 537, 189 N.W.2d 243, 251 (1971), citing McCabe v. Atchison, T. & S.F.R. Co., 235 U.S. 151 (1941); Randall v. Cowlitz Amusements, 194 Wash. 82, 76 P.2d 1017 (1938); People ex rel. Bibb v. Alton, 209 Ill. 461, 70 N.E. 640 (1904). See also Everett v. Harron, 380 Pa. 123, 110 A.2d 383, 385–86 (1955).

Since the Virgin Islands Civil Rights Commission does not exist, plaintiffs are not required to exhaust the administrative remedies created by Chapter 5 of Title 10. Accord, Percy v. Brennan, 384 F.Supp. 800, 807 (S.D.N.Y. 1974), citing McNeese v. Board of Education, 373 U.S. 668 (1973), Plano v. Baker, 504 F.2d 595 (2d Cir. 1974), and Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969). See generally 3 Davis, Administrative Law § 20.07 (1958) Rather, they have the right, in my view, to bring their claims directly to this Court.[4] And this Court, in turn, may

---

[4] I note that Chapter 5 of Title 10 specifically defines the jurisdiction of the Virgin Islands Civil Rights Commission. Section 61 states: ". . . and the Commission established hereunder is hereby given *general* jurisdiction and power. . . ." (Emphasis added.) In framing this section, the Legislature of the Virgin Islands did not use terms implying that the Commission was to have the *exclusive* original right to hear and make determinations concern-

" 'use any available remedy to make good the wrong done.' " State of Alabama v. United States, 304 F.2d 583, 590 (5th Cir.), aff'd, 371 U.S. 37 (1962), citing, inter alia, Mitchell v. DeMario Jewelry, 361 U.S. 288 (1961) and Bell v. Hood, 327 U.S. 678 (1946).

 In connection with the foregoing discussion, I mention several reasons for rejecting defendant's argument that an action for a mandatory order is plaintiffs' only option. First, mandatory orders, such as that contemplated in 5 V.I.C. § 1361, should be granted only in extraordinary circumstances, see United States v. Olds, 426 F.2d 562, 565 (3d Cir. 1970), and only if there are no other means of vindicating the rights alleged to have been violated. Here, however, the rights may be vindicated simply by permitting a private action under the statute. Second, limiting plaintiffs to seeking a mandatory order could ultimately leave them without any remedy. Issuance of such an order is purely discretionary with the district court, and it is not unlikely, due to considerations of comity, that I would decline to exercise my power under § 1361 to order appointment of the Commission. Plaintiffs would then be unable to enforce their clearly existing rights under Chapter 5. Third, and finally, even if I were to issue a mandatory order, the Governor would require and should be allowed, a reasonable time to select persons for the Commission. But a reasonable time for the Governor to make his appointments would not necessarily be a reasonable time for plaintiffs to wait before being able to have their claims considered, especially in view of the two years

---

ing civil rights matters. Indeed, in light of the provisions of 24 V.I.C. § 451 et seq. the Commission could hardly be said to possess this right.

For this Court to read the word "exclusive" into the statute would be to narrow it. Yet, in light of the ends it seeks to achieve, and the liberal treatment state courts have traditionally accorded statutes of this type, only a broad reading would be appropriate. It is therefore certainly arguable that parties whose rights have been violated under § 64 of Chapter 5 need not bring their claims in the first instance to the Commission, but may bring them directly to District Court.

which have already elapsed since their complaint was originally filed. For all these reasons, plaintiffs should not be relegated to seek this extraordinary, and seemingly unattainable, remedy.

■ The final contention of defendant, that 10 V.I.C. § 73 grants exclusive jurisdiction to the Municipal Court of the Virgin Islands to review claims under Chapter 5, is without merit. Section 73 provides, in pertinent part:

Whenever the Commission has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this chapter, and that pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, *the Commission may bring a civil action in the Municipal Court of the Virgin Islands by filing with it a complaint* (1) signed by the Chairman . . . of the Commission, (2) setting forth facts pertaining to such pattern or practice and (c) requesting such relief as provided in section 74 hereof . . . as it deems necessary to insure the full enjoyment of the rights herein described. (Emphasis added.)

This section cannot be interpreted as granting exclusive original jurisdiction to the municipal court in light of § 22 of the Revised Organic Act of 1954. That section reads:

The District Court of the Virgin Islands shall have the jurisdiction of a district court of the United States in all causes arising under the constitution, treaties and laws of the United States, regardless of the sum or value of the matter in controversy. *It shall have general original jurisdiction in all other causes in the Virgin Islands exclusive jurisdiction over which is not conferred by this Act upon the inferior courts of the Virgin Islands.* When it is in the interest of justice to do so, the district court may on motion of any party transfer to the district court any action or proceeding brought in an inferior court and the district court shall have jurisdiction to hear and determine such action or proceeding . . . . (Emphasis added.)

Section 22 makes clear that the district court has original jurisdiction over all causes unless the Revised Organic Act

confers exclusive original jurisdiction on the municipal court. Exclusive original jurisdiction has been granted to the municipal court under § 23 of the Revised Organic Act, only as to "all civil actions wherein the matter in controversy does not exceed the sum or value of $500, exclusive of interest and costs . . . ." The municipal court is given *concurrent* original jurisdiction, under the Act, with the district court, "of all actions, civil or criminal, jurisdiction of which may hereafter be conferred upon them by local law."

The original jurisdiction of the district court, as outlined in the Revised Organic Act, is restated, more or less verbatim, by 4 V.I.C. § 32. Likewise, the exclusive original jurisdiction of the municipal court, as defined by the Act, is restated by 4 V.I.C. § 73. And again, the original *concurrent* jurisdiction of the municipal court, as outlined by the Act, is restated by § 74 of Title 4. Pursuant to this last section, the municipal court has jurisdiction concurrent with the district court "(8) of all other causes in which jurisdiction is expressly conferred upon the Municipal Court by law."

In short, § 22 of the Revised Organic Act precludes a grant of *exclusive* original jurisdiction to the municipal court by Chapter 5 of Title 10, or by any other local law. At best, Chapter 5 can merely extend *concurrent* jurisdiction to the municipal court over civil rights matters.

For all the foregoing reasons, I find that the motion to dismiss the amended complaint must be denied.